(C.D. 2264)

BOND MANUFACTURING CO. WHEELER & MILLER } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 8, 1961)

*Lawrence & Tuttle* (*George R. Tuttle, Jr.,* and *Barnes, Richardson & Colburn* of counsel) for the plaintiffs.

*William H. Orrick, Jr.,* Assistant Attorney General (*Richard E. FitzGibbon,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: Certain imported merchandise was classified by the collector of customs at the port of San Francisco within the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as articles not specially provided for, composed wholly or in chief value of iron or steel, and, accordingly, was assessed with duty at the rate of 22½ per centum ad valorem.

The articles in issue are invoiced as "Hardened Steel Tines For Lawn Aerators." They are claimed to be parts of agricultural hand tools, specifically, drainage tools, which are provided for in paragraph 373 of said act, as modified by said trade agreement, at the rate of 7½ per centum ad valorem.

Insofar as here pertinent, said provisions read as follows:

Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

   *       *       *       *       *       *       *

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*      \*      \*      \*      \*      \*      \*

Other (except slide fasteners and parts thereof) ____ 22½% ad val.

Paragraph 373, as modified, *supra*:

Shovels, spades, scoops, forks, hoes, rakes, and drainage tools, and parts thereof, composed wholly or in chief value of metal, whether partly or wholly manufactured:

Forks, hoes, and rakes, if not agricultural hand tools, and parts thereof_____ 15% ad val.

Other_____ 7½% ad val.

As the case has been presented for decision, there is no dispute over the proposition that the imported tines are essential parts of so-called aerators, also referred to as sod savers. It is established that when two tines are fitted into the base of a handle bar, similar to a shovel handle, but with a crosspiece at the top, a complete garden tool is formed. A sample of a tine and of a handle bar are in evidence as plaintiffs' exhibits 1 and 2, respectively.

What is involved here is the question of whether such tools are drainage tools, within the contemplation of paragraph 373, as modified, *supra*.

Evidence of the function of these devices was provided by the owner of the importing firm, who stated:

This item is used to cut holes into the lawn, for the prime purpose of permitting the water to be drained down to a greater depth, or about 4½ inches by about one-half-inch in diameter. Each time it is pushed into the ground, a piece of earth is ejected out of the side of the tine. In these holes the water can drain down to the roots of the grass and thereby permitting the water to crush the fertilizer down to the roots at greater depth, and this is important, because most of the lawns over the season become dried out unless they are watered properly, and if water can't be gotten down to the lower depths there the lawns are more vulnerable at the time of a drought.

The witness further explained that when the earth of a lawn is hard, water will drain off the surface, without penetrating to the roots of the grass. The 4½-inch holes made by the sod saver tend to reverse this drainage by collecting water, and carrying it to a lower depth.

Plaintiffs contend, therefore, that these aerators or sod savers fall within the common meaning of the term "drainage tools." It is argued that the holes which they form are conduits through which water is drained from the surface of the ground. The following definitions are cited in support of this position:

Webster's New International Dictionary, 1934 edition, unabridged:

Drainage: \* \* \* 3. Any device for draining, or material used to facilitate draining; as to put drainage in a flowerpot. 4. The act of removing excess

water from land by means of surface or subsurface conduits; also a system of such conduits.

Drain: * * * 2. To exhaust of liquid contents by drawing them off; to make gradually dry or empty; to remove surface water from, as streets, by gutters, etc.; to deprive of moisture; hence, to exhaust; to empty of wealth, resources or the like; as to drain a country of its species; to drain the cup. 3. To filter "salt water, drained through earth."

Conduit: An artificial channel, as a pipe, or a natural channel or passage, for conveying water or fluid; an aqueduct or canal; as, the conduit of a volcano; hence, a channel or medium of transmitting. 2. A structure from which water issues, as for distribution; specif., a fountain. 3. A tube or trough for receiving and protecting electric wires or cables, as for telephones, conduit railways, etc.

Funk & Wagnalls New Standard Dictionary of the English Language, unabridged edition, 1959:

Drainage, n. 1. The act or process of draining; as the drainage of a farm. 2. The means of draining, collectively, as a system of conduits, trenches, pipes, etc. 3. That which is drained off, waste water, or the water carried by a system of rivers and streams into a catchment-basin. 4. The district or area drained; drainage-basin, as the drainage of the Ohio river. 5. The quality in a soil which enables it to carry off surplus water and which distinguishes a wet from a dry soil.

Drain, n. 1. The act of draining, drawing off, or exhausting, continuous strain or outflow; as, a drain upon the system; a drain on the treasury. 2. That by which draining is done; especially, an underground conduit or pipe, or an open or covered trench on the surface, for conveying water, as from a building, town, or field.

The Century Dictionary, an Encyclopedic Lexicon of the English Language, published 1900:

Drainage, n. 1. The act or process of draining; a gradual flowing off, as of a liquid. 2. The system of conduits, channels, or passages by means of which something is drained. 3. That which is drained off; that which is carried away by the systems of rivers and their minor affluents in any drainage-basin, or area of catchment, or in any part thereof.

Drain, v. To draw off gradually, as a liquid; remove or convey away by degrees, as through conduits, by filtration, or by any comparable process; as, to drain water from land, wine from the lees, or blood from the body; to drain away the specie of a country.

Drain, n. 1. The act of draining or drawing off, or of emptying by drawing off; gradual or continuous outflow, withdrawal, or expenditure. 2. That which drains, or by means of which draining is immediately effected.

Seemingly, the object achieved by the instruments in question is the very converse of the concept of drainage suggested by the foregoing definitions. Basically, drainage is the removal of excess water. Basically, the holes dug by these tools are for the retention of water which would otherwise "drain off" the lawn. To characterize these small holes, 4½ inches in depth and approximately one-half of 1 inch in diameter, as channels for conveying fluid, is to strain the meaning of the word "conduit" beyond its normal intendment.

In the case of agriculture, especially, drainage is a method of ridding the soil of unwanted water to improve its quality. It is the collection of water beneath the surface of the soil that causes it to become sour and waterlogged. See The Illustrated Dictionary of Gardening, edited by George Nicholson, volume 1, page 492; also the Encyclopedia Americana, volume 9, pages 299–300, 1953 edition. Yet, according to the evidence here, the holes made by these instruments are for the purpose of retaining water and carrying it below the surface of the ground.

The Encyclopedia Americana, *supra*, makes the following reference to drainage tools:

The tools used in the formation of drains are few in number, and of a very simple description. They consist of a set of spades—generally three of different sizes—gradually diminishing in width to suit the different parts of drains. For taking out the last narrow spit, to form the seat for the draining pipe, long, narrow, triangularly shaped spades, called bottoming tools, are used. There are also scoops of various widths, furnished with long handles, and rounded or flattened in the soles according as they are required to finish the bottom of the drain for the reception of stones, a horse-shoe tile and sole, or a draining pipe. For the purpose of laying pipes in minor and deep drains an instrument called a pipe-layer, consisting of a short rod attached at a right angle to a long handle, which enables the workman to lay the pipes without going into the drain or reaching the bottom with his hand, is employed. Where the subsoil is strong or indurated, a hand-pick or a foot-pick is required to loosen it before it can be shoveled out.

The provision for drainage tools was first incorporated in the Tariff Act of 1922, presumably as the result of a request by the American Shovel Institute for special tariff treatment of shovels, spades, scoops, and drainage tools. Hearings of the Committee on Ways and Means, 66th Congress, 1920–1921, part II, pages 1125–1126. Research fails to disclose any further explanation of the intent of Congress in employing the phrase, either at the time of its original use or at the time of its reenactment in the present law. However, in the 1948 Summaries of Tariff Information, prepared by the United States Tariff Commission, volume 3, part 5, page 2, drainage tools are described as "narrow spades used for trenching."

Although plaintiffs' witness testified that the sod saver is pushed into the ground in much the same way as a regular spaded fork or a shovel, we do not consider that these devices are sufficiently similar to the foregoing described drainage tools, as to warrant classification within the claimed provision. We find, therefore, that the imported steel tines are parts of garden implements which are not drainage tools and, hence, not entitled to classification in paragraph 373, as modified, *supra*. The claim of plaintiffs to that effect is overruled.

Judgment will be entered accordingly.