BEFORE THE SECOND DIVISION, NOVEMBER 8, 1962

**No. 67177.**—Harry Gold Distributor *v.* United States, protest 59/15699 (B) (Los Angeles).

LAWRENCE, Judge: Certain pick-mattocks, imported from England, were classified by the collector of customs as articles or wares, not specially provided for, composed wholly or in chief value of base metal, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of

Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was imposed thereon at the rate of 19 per centum ad valorem.

By its timely protest, plaintiff herein controverts said classification and duty assesssment contending that the articles in issue should properly have been classified as drainage tools within the purview of paragraph 373 of said act (19 U.S.C. § 1001, par. 373), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and dutiable at 7½ per centum ad valorem.

A claim was also made in the protest that the articles in issue were within the provisions of paragraph 326 of said act (19 U.S.C. § 1001, par. 326), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, which provides for classification of "Blacksmiths' hammers, tongs, and sledges, track tools, wedges, and crowbars, of iron or steel" for which duty at the rate of eleven-sixteenths of 1 cent per pound is provided. At the trial of this case, plaintiff's counsel abandoned said claim, and it will be dismissed.

We set forth below the applicable provisions of the statute.

Paragraph 397 of the Tariff Act of 1930, as modified, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:
    Composed wholly or in chief value of platinum * * *

    Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

    Not wholly or in chief value of tin or tin plate:

        Other * * *_____19% ad val.

Paragraph 373 of said act, as modified, *supra:*

Shovels, spades, scoops, forks, hoes, rakes, and drainage tools, and parts thereof, composed wholly or in chief value of metal, whether partly or wholly manufacured:
    Forks, hoes, and rakes, if not agricultural hand tools, and parts thereof * * *
    Other_____7½% ad val.

Harry Gold, when called to testify on behalf of plaintiff, stated that he has been in the wholesale surplus distributing business in Los Angeles since 1946. Gold has dealt, in the course of his business, not only in American Government-issue pick-mattocks, similar to the one received in evidence as plaintiff's exhibit 1, but also in British Government surplus pick-mattocks, one of which items representing the merchandise in controversy was received in evidence as plaintiff's exhibit 2.

Gold testified that his first familiarity with an American pick-mattock (exhibit 1) was when he was in the military service during World War II in New Guinea, at which time he used it in the jungles making trenches around tents for water runoff "and other things." If the terrain was hard, the pick end was used first and, then, the flat end.

The witness had also used one of the imported articles in his own garden for digging a trench around different shrubs for "water run-off." Gold testified that the manner of construction of the imported articles does not lend them to use in digging in the same sense that shovels would be used. He stated that the function and purpose of the British pick-mattocks (exhibit 2) were the same as the American pick-mattocks. He had sold both items in his surplus business

throughout the United States and advertised them as camping equipment and had seen them so displayed.

Both parties, in their briefs, make reference to the case of *Bond Manufacturing Co.* and *Wheeler & Miller* v. *United States*, 46 Cust. Ct. 250, C.D. 2264, wherein the provision for drainage tools in paragraph 373 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, was given studious consideration. In the course of the opinion therein, which held that lawn aerators used to dig holes in the earth for the purpose of retaining water and carrying it below the surface of the ground to provide water to the roots of grass were not drainage tools within the *eo nomine* provision therefor, the court set forth several definitions of "drainage" and "drain." Reference was also made to the Encyclopedia Americana, volume 9, pages 299–300, 1953 edition, wherein drainage tools are referred to as follows:

> The tools used in the formation of drains are few in number, and of a very simple description. They consist of a set of spades—generally three of different sizes—gradually diminishing in width to suit the different parts of drains. For taking out the last narrow spit, to form the seat for the draining pipe, long, narrow, triangularly shaped spades, called bottoming tools, are used. There are also scoops of various widths, furnished with long handles, and rounded or flattened in the soles according as they are required to finish the bottom of the drain for the reception of stones, a horse-shoe tile and sole, or a draining pipe. For the purpose of laying pipes in minor and deep drains an instrument called a pipe-layer, consisting of a short rod attached at a right angle to a long handle, which enables the workman to lay the pipes without going into the drain or reaching the bottom with his hand, is employed. Where the subsoil is strong or indurated, a hand-pick or a foot-pick is required to loosen it before it can be shoveled out.

Whereas it is axiomatic in customs law that an exhibit oftentimes may be a potent witness (*American Express Company* v. *United States*, 39 C.C.P.A. (Customs) 8, C.A.D. 456), a visual examination of plaintiff's exhibit 2 does not, *per se*, indicate that the imported pick-mattocks are drainage tools or are implements used for drainage purposes. This, we believe, is amply supported by lexicographic authorities which will be referred to, *infra*.

Research discloses that lexicographic definitions of the term "pick-mattock" bear a close relationship to the words "mattock," "pickax," and "pick." Consideration has been given to the following:

### The Century Dictionary, volume IV (1890):

**pick-mattock,** *n.* A mattock having a pointed pick at one end of the head, and at the other a blade set crosswise to the handle.

**mattock,** *n.* * * * An instrument for loosening the soil in digging, shaped like a pickax, but having its ends broad instead of pointed.

**pickax, pickaxe,** *n.* * * * A pick, especially one with a sharp point on one side of the head and a broad blade on the other. The pointed end is used for loosening hard earth, and the other for cutting the roots of trees. * * * [Contains illustration of Pickax or Pick-mattock.]

### The New Century Dictionary, volume one (1946):

**mattock,** *n.* A kind of pick with an arm or blade like that of an adz, and commonly with another arm opposite either like a narrow ax-blade or terminating in a point: used for loosening the soil, etc.

**pick-ax, pick-axe,** *n.* A pick, esp. one with the iron bar tapering to a point at one end and having a chisel-like blade of equal length at the other.

### Webster's New World Dictionary of the American Language, college edition (1960):

**mattock,** *n.* * * * a tool for loosening the soil, digging up and cutting roots, etc.: it is like a pickax but has a flat, adz-shaped blade on one or both sides.

**pickax,** *n.* \* \* \* a pick with a point at one end of the head and a chisel-like edge at the other; mattock.

## The American College Dictionary (1961):

**mattock,** *n.* an instrument for loosening the soil in digging, shaped like a pickax, but having one end broad instead of pointed.

**pick,** *n.* 1. a hand tool consisting of an iron bar, usually curved, tapering to a point at one or both ends, mounted on a wooden handle, and used for loosening and breaking up soil, rock, etc.

**pickax,** *n.* 1. a pick, esp. a mattock.

In none of the foregoing definitions is reference made to drainage, but rather that a pick-mattock would be used for loosening soil and digging up and cutting roots.

Inherent in the collector's classification of the pick-mattock in issue as articles, not specially provided for, in paragraph 397 of the Tariff Act of 1930, as modified, *supra*, is the presumption that the collector has given due consideration to the *eo nomine* and other provisions of the metal schedule before resorting to the provisions of paragraph 397. The plaintiff herein having, by its protests, put such classification in issue before this court has assumed the dual burden of not only overcoming the presumption attaching to the collector's motion but also of establishing its claim by competent evidence. *Frank P. Dow Co., Inc.* v. *United States,* 21 C.C.P.A. (Customs) 282, T.D. 46816.

In the instant case, we have the testimony of one witness, Gold, who, although dealing in pick-mattocks similar to the present importation since 1946 and selling them throughout the United States, was limited in his testimony as to the use of the imported articles to digging a trench around different shrubs in his own garden "for water run-off." And this testimony is not convincing, since it is to the effect that a trench was dug "around" different shrubs in his garden, which would suggest that it was done for water retention rather than for drainage purposes.

No other use of the article in its wide area of distribution has been presented to the court. Whereas it has been held that the testimony of one witness may be sufficient to prove the use of an article in issue, *United States* v. *Gardel Industries,* 33 C.C.P.A. (Customs) 118, C.A.D. 325, we are of the opinion that the testimony before the court in the instant case is too limited in its scope and inadequate in its nature.

Upon the record before the court and for the reasons stated above, plaintiff's claim for classification of the instant pick-mattocks as drainage tools in paragraph 373 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, is overruled. Plaintiff's alternative claim for classification within the purview of paragraph 326 of said act, as modified by the Torquay protocol, *supra*, having been abandoned, is dismissed.

Judgment will issue accordingly.